IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JODI L. DAMRON, | ) | CASE NO. 3:16 CV 322 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Jodi L. Damron, for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4]   Under the initial order[5] the parties have briefed their positions.[6] They have participated in a telephonic oral argument.[7]

---

[1] ECF # 21. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 6.

[6] ECF # 17 (Commissioner's brief); ECF # 14(Damron's brief).

[7] ECF #22.

# Facts

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Damron, who was 46 years old at the time of the administrative hearing,[8] is a high school graduate who is married and lives with her husband and son.[9]  Her past relevant employment history includes work as a home health aide, activities director, marketing director, and adult advocate.[10]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Damron had severe impairments consisting of major depressive order; anxiety disorder, not otherwise specified/general anxiety disorder; and cluster headaches (20 CFR 404.1520(c)).[11] The ALJ made the following finding regarding Damron's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: no exposure to obvious hazards.  The claimant can also: understand, carry out and remember simple instructions where the pace of productivity is not dictated by an external source over which the claimant has no control such as an assembly line or conveyor belt; respond appropriately to usual work situations and changes in a routine work setting that is repetitive from day to day, with few and expected changes, and requires rare (meaning less than occasionally but not completely precluded) independent judgment or decision making; and

---

[8] ECF # 11, Transcript ("Tr.") at 48.

[9] *Id*. at 48-49.

[10] *Id*. at 35.

[11] *Id.* at 25.

respond appropriately to supervision and coworkers, but not with the general public.[12]

Given that residual functional capacity, the ALJ found Damron incapable of performing her past relevant work as a home health aide, activities director, marketing director, and adult advocate.[13]

Based on the answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Damron could perform.[14] The ALJ, therefore, found Damron not under a disability.[15]

**B.    Issues on judicial review**

Damron asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Damron presents the following issues for judicial review:

- Whether the ALJ erred in her analysis of residual functioning where she failed to provide good reasons for the weight she gave to the opinion of treating psychiatrist Gehlot and her analysis fails both legally and factually.[16]

- Whether the ALJ's finding concerning residual functional capacity is supported by substantial evidence where the opinion of the State agency's

---

[12] *Id.* at 28.

[13] *Id*. at 35.

[14] *Id*. at 36.

[15] *Id*. at 37.

[16] ECF # 14 at 1.

consultative on whom she claims to have given significant weight shows greater limitations.[17]

The Court concludes that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

---

[17] *Id.*

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      *The treating source rule***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

---

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[21] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27]  In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[28]

---

[22] *Id.*

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[28] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[29] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[30] The court noted that the regulation expressly contains a "good reasons" requirement.[31] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[32]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[33] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[34] The former confers a substantial, procedural right on

---

[29] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[30] *Id.* at 544.

[31] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[32] *Id.* at 546.

[33] *Id.*

[34] *Id.*

the party invoking it that cannot be set aside for harmless error.[35] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[36]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[37] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[38] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[39] *Blakley v. Commissioner of Social Security*,[40] and *Hensley v. Astrue*.[41]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[42] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[35] *Id.*

[36] *Id.*

[37] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[38] *Id.* at 375-76.

[39] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[42] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[43] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[44] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[45]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[46] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[47] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[48] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[43] *Id.*

[44] *Id.*

[45] *Rogers*, 486 F.3d at 242.

[46] *Gayheart*, 710 F.3d at 376.

[47] *Id.*

[48] *Id.*

and the treatment reports.[49] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[50]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[51]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[52] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[53] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[54] or that objective medical evidence does not support that opinion.[55]

--------

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Rogers*, 486 F.3d 234 at 242.

[53] *Blakley*, 581 F.3d at 406-07.

[54] *Hensley*, 573 F.3d at 266-67.

[55] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

-10-

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[56] The Commissioner's *post hoc* arguments on judicial review are immaterial.[57]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[58]

- the rejection or discounting of the weight of a treating source without assigning weight,[59]

---

[56] *Blakley*, 581 F.3d at 407.

[57] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[58] *Blakley*, 581 F.3d at 407-08.

[59] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[60]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[61]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefore,[62] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[63]

The Sixth Circuit in *Blakley*[64] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[65] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[66]

_____

[60] *Id.*

[61] *Id.* at 409.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend*, 375 F. App'x at 551-52.

[64] *Blakley*, 581 F.3d 399.

[65] *Id.* at 409-10.

[66] *Id.* at 410.

In *Cole v. Astrue*,[67] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[68]

## B.    Application of standards

As detailed above, this matter presents two issues arising from the RFC determination. Resolution of the first issue, concerning the weight given to opinion of Dr. Upender Gehlot, M.D., Damron's treating psychiatrist, will shape the resolution of the second question, which goes to whether the ALJ erred by not incorporating all the functional capacity limitations set out in the opinion of a state agency reviewer.

### 1.    Dr. Gehlot's opinion

The ALJ determined that Dr. Gehlot's May 2013 assessment was that Damron "has marked to extreme limitations in almost all areas of work-related mental functioning."[69]  The ALJ acknowledged that the source opined that Damron "has a marked restriction in the activities of daily living, a marked impairment of her ability to maintain social functioning, an extreme impairment in her ability to maintain concentration, persistence and pace, an extreme impairment in her ability to withstand the stress and pressure of daily activity, and

---

[67] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[68] *Id.* at 940.

[69] Tr. at 31.

-13-

two or more periods of decompensation of extended duration."[70]  Dr. Gehlot assigned Damron a GAF score of 50 to 60 on average and assessed that this score would be reduced to 40-45 during periods of depression, a score which the ALJ termed as "indicating moderate to severe symptoms."[71]

In concluding that Dr. Gehlot's opinion should receive little weight, the ALJ did not begin her analysis with a recognition that Dr. Gehlot was a treating source, although the record confirms that status.[72]  The ALJ immediately began by stating that the functional opinion recited above was "inconsistent" with both Dr. Gehlot's treatment notes and with Damron's own descriptions of her levels of activity and of social functioning.[73]  The ALJ also noted that Dr. Gehlot's treatment records showed that her symptoms significantly improved with adjustments to her medications, and that the notes reflect "little" in the area of clinical findings that "would be expected" if Damron's condition were as severe as represented, and further remarked that there were no documented extended periods of decomposition in the record.[74]  Finally, the ALJ concluded that Dr. Gehlot's assessed GAF

----

[70] *Id.*

[71] *Id*.

[72] Dr. Gehlot began treating Damron in September of 2012. Tr. at 408. He then saw Damron at least four more times in 2012, before seeing her again in early 2013 in advance of his functional opinion in May of 2013. *See id*. at 384-404.  Dr. Gehlot is an M.D. with a specialty in psychiatry. *See id.* at 408.

[73] *Id*. at 31.

[74] *Id*.

scores in the opinion were lower than those he assessed in his treatment notes, where he "consistently" estimated scores in the moderate range of 53-59.[75]

Damron contends that this analysis of Dr. Gehlot's opinion is flawed because it was legally insufficient in stating reasons for granting less than controlling weight to that opinion.[76]  To that point, Damron raises two major arguments:

(1) the ALJ never identified Dr. Gehlot as a treating source;[77] and

(2) the ALJ's citation to the record was insufficient to permit meaningful judicial review.[78]

Damron also maintains that ALJ's assessment of Dr. Gehlot's opinion was factually flawed in that any alleged inconsistency between that opinion and Damron's own statements regarding her daily activities is only apparent, and not real.[79]  Further, and in a similar vein, she argues that Dr. Gehlot's treatment notes display clinical findings supportive of Dr. Gehlot's opinion and not indicative of the ALJ's conclusion that Damron showed improvement with medication.[80]

---

[75] *Id*.

[76] ECF # 14 at 16.

[77] *Id*. at 18.

[78] *Id*.

[79] *Id*. at 19.

[80] *Id*. at 20-22.

As Damron has pointed out, although Dr. Gehlot was a treating source, the ALJ's analysis of his functional opinion did not include that finding. I am continually frustrated that ALJs do not routinely adopt a straightforward treating-source template - a checklist, if you will - for insuring that their analysis of these opinions are amenable to meaningful judicial review.[81] I nevertheless acknowledge, as I observed in *Aiello-Zak v. Commissioner of Social Security*,[82] case authority exists supporting a relaxed minimally acceptable foundational requirements for *Gayheart* analysis:

> [R]ecent authority has held that so long as an ALJ adequately addresses the factors required by *Gayheart* and articulates good reasons for discounting an opinion of a treating source, the Commissioner's decision will not be upset by a failure to strictly follow the Gayheart template. As the Sixth Circuit recently observed in *Dyer v. Social Security Administration*, the opinion of the treating source may be discounted 'where that opinion was inconsistent with other evidence of record or the assessment relied on subjective symptoms without the support of objective findings." In such situations, the ALJ must give good reasons for the weight given and, in arriving at the decision, must consider the "specific factors" applicable to weighing the opinion of a treating source while supporting the "good reasons" given with the evidence of record. However, as the Sixth Circuit also teaches, in considering the relevant factors, an ALJ is under no obligation to conduct an "exhaustive factor-by-factor analysis" of the treating physician rule before deciding on a determination of weight. Stated differently, what is required is that the decision must be "sufficiently specific to make clear the weight given to the opinion and the reasons for that weight."

---

[81] *Smith v. Comm'r of Soc. Sec.*, No.5:13CV820, 2014 WL 1944247, at **7-8 (N.D. Ohio May 14, 2014).

[82] *Aiello-Zak v. Comm'r of Soc. Sec.,* 47 F. Supp. 3d 550 (N.D. Ohio 2014).

Here, because the ALJ articulated the weight given and provided multiple reasons for that decision, any failure to otherwise strictly follow the *Gayheart* template is not grounds for a remand.

As to the stated grounds, Damron argues that it was insufficient to claim that Dr. Gehlot's opinion was inconsistent with his treatment notes because that explanation was not accompanied by a clear indication of what specific treatment notes the ALJ judged to be inconsistent with the functional opinion.[83]  To that point, Damron argues that a mere recitation of a conclusory phrase to that the opinion was not supported by the facts does not provide any basis for meaningful judicial review.[84]

An ALJ must do more than merely make a general statement that the medical evidence does not support the opinion.[85]  But, in this case, the ALJ's general statement on one page of the opinion must be read together with the ALJ's detailed discussion of Dr. Gehlot's treatment notes on the preceding page.  In that discussion of notes from examinations done in 2012-2013,[86] the ALJ observed - and supported with citations to the record - the instances where Dr. Gehlot noted significant improvement in Damron's symptoms after adjusting her medications;[87] recorded findings in November 2012 that Damron's "mood was good, with

---

[83] ECF # 14 at 16-17.

[84] *Id*. at 17.

[85] *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551-52 (6th Cir. 2010).

[86] Tr. at 30-31.

[87] *Id.* at 30 (citing record).

-17-

no ongoing feelings of worthlessness, improved energy and motivation, and no side effects from her medication;"[88] and reported in 2013 that, although Damron's "symptoms varied in intensity, yet her clinical findings remained unremarkable," with only a few exceptions.[89]

This detailed presentation by the ALJ of precise findings in Dr. Gehlot's treatment notes was followed only three paragraphs later by the ALJ referring to a summary of those findings in her statement of reasons why Dr. Gehlot's opinion was at odds with his treatment notes. As such, the reasons relied on by the ALJ here are clearly stated and the supporting evidence is easily discerned. Thus, the reasons are subject to meaningful judicial review. While one might arguably prefer that the ALJ had drawn a tighter, more explicit link in her summary between her conclusion and the supporting facts she previously outlined, that is, at best, the basis for an editor's note on ways of improving one's writing style, and not a ground for a remand.

As to Damron's contention that any observed inconsistency is only apparent, and not real, owing to the presence of other, more supportive evidence in the notes, this argument represents an impermissible attempt to have me re-weigh the evidence. While it is true that an ALJ may not distort the evidence by "cherry-picking" only a few selective portions of it while ignoring its true overall nature, it is undeniably the right of the ALJ to read the record differently from the claimant, so long as the reasons for doing so are clear and valid. It is black-letter law that this Court must defer to the Commissioner's findings if they are

---

[88] *Id.* (citing record).

[89] *Id.* (citing record).

supported by substantial evidence, even though there is other evidence in the record that would support an opposite conclusion.[90]

In a similar vein, Damron's argument that her own testimony as to her level of activity and her level of social functioning were improperly relied on by the ALJ is also unavailing.[91] In essence, her contention is that because she "has more bad days than good,"[92] the ALJ improperly relied on Damron's testimony about her abilities during the good days to the exclusion of her limitations in the bad days.

The ALJ here did deal with this issue by noting that the self-reported symptoms do not match with the medical evidence, which shows that Damron's symptoms were under control for most of the relevant period, except when she herself was adjusting her medications.[93]  The ALJ concluded that the medical notes show that Damron "is generally doing well, and her GAF scores are generally high," as is consistent with an ability to work within the terms of the RFC.[94]  To the extent that this conclusion reflects a finding by this ALJ that the medical evidence is more probative of Damron's functional ability than is her

---

[90] *French v. Commissioner of Soc. Sec.*, No. 5:13 CV 1655, 2014 WL 4594784, at *7 (N.D. Ohio Sept. 15, 2014)(citations omitted).

[91] ECF # 14 at 19.

[92] *Id.*

[93] Tr. at 34.

[94] *Id.* at 35.

own testimony,[95] that credibility determination is reserved to the ALJ, and will not be disturbed by a reviewing court absent a compelling reason.[96] For the reasons stated here, I find no such compelling reason and so affirm the credibility finding of the ALJ.

## 2.    *The RFC*

Finally, Damron maintains that the ALJ erred by creating an RFC that does not incorporate all the restrictions set forth by the state reviewing psychologist.[97] In particular, Damron asserts that the ALJ did not include social restrictions set out by Dr. Katherine Fernandez, Psy. D., that Damron was able "to carry out simple and more complex tasks in a setting without strict time or production quotas and where changes are infrequent and can be easily explained/demonstrated. She can interact with familiar others and can interact superficially with strangers on occasion. She would benefit from a supervisor who is available to provide support and reassurance."[98] Damron contends that by fashioning the RFC to provide only that she would be able to "respond appropriately to supervision and coworkers, but not the general public," while not including the other factors noted by Dr. Fernandez, the RFC, as formulated, lacks the support of substantial evidence.[99]

---

[95] *Id.*

[96] *Beltran v. Comm'r of Soc. Sec.,* No. 5:15 CV 644, 2016 WL 3364923, at *6 (N.D. Ohio June 17, 2016)(citations omitted).

[97] ECF # 14 at 22-24.

[98] *Id.* at 23 (quoting tr. at 99-100).

[99] *Id.*

As a review of the RFC discloses, the only direct recommendation made by Dr. Fernandez that is not in some way reflected in the RFC is the observation that Damron would benefit from a supportive and reassuring supervisor. Absent more, it is difficult to see how the absence of that sentiment from the RFC supports a remand.

Indeed, although Damron asserts that Dr. Fernandez's comment in this regard is functionally identical to a medical finding that an individual required extra supervision in the workplace, such as sustained reminders as to elements of the task, that is an advocate's interpretation of Dr. Fernandez's observation, not a necessary conclusion from it. Dr. Fernandez's observation was in the nature of a beneficial addition to any circumstances of employment and was not the statement of a foundational precondition for any successful possible employment. As such, I find no error in the RFC in this instance.

## Conclusion

For the reasons stated, I find that the decision of the Commissioner to deny benefits to Jodi L. Damron is supported by substantial evidence and is, therefore, affirmed.

Dated: January 30, 2017                          s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge

-21-